SOUTHERN PAC. CO. v. EVANS. (No. 546.)

(Court of Civil Appeals of Texas. El Paso. Feb. 17, 1916.)

1. MASTER AND SERVANT ☞286—INJURIES TO SERVANT — ACTIONS — EVIDENCE — SUFFICIENCY.

In an action by a switchman injured between the running boards of two cars, evidence *held* to raise the issue of negligence with respect to defective drawheads or coupling appliances allowing the cars when switched to come too close together on striking, and so that issue was properly submitted.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. ☞286.]

2. MASTER AND SERVANT ☞286—INJURIES TO SERVANT—NEGLIGENCE.

In an action by a switchman injured when a car was let down against the cars on which he was riding, the question of negligence in propelling the last car at an excessive speed, *held* not raised by the evidence and improperly submitted.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. ☞286.]

3. MASTER AND SERVANT ☞139—INJURIES TO SERVANT—NEGLIGENCE.

Where the railroad company let down a car against those on which plaintiff, a switchman, was riding without a switchman to control the movement of the last car contrary to its rules, such negligence does not, where that car was not moving at an excessive speed and the impact was not unusual, warrant recovery for injuries which plaintiff sustained by being crushed between the running boards of the cars, such negligence not being the proximate cause of the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 275, 282, 289, 296; Dec. Dig. ☞139.]

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Action by John Evans against the Southern Pacific Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Beall, Kemp & Nagle, of El Paso, for appellant. Geo. E. Wallace and P. E. Gardner, both of El Paso, for appellee.

HIGGINS, J. Evans brought this suit to recover of appellant damages resulting from personal injuries sustained by him while he was in the service of appellant as a switchman working in its yards in Los Angeles, Cal. While engaged in the operation of switching cars in said yard, and while standing upon the brake platform of a car, it is alleged a string of cars was switched onto

the track where he was working, and struck the car upon the brake platform whereon he was standing, and by the force of the collision the cars were driven close together, and he was caught between the running boards and injured.

As grounds of negligence, plaintiff alleges that the defendant had a rule or custom prohibiting the switching of cuts of cars on any side track without having and maintaining on said cut of cars a switchman whose duty it was to control same, and that the car which was switched and struck against the cut of cars upon which plaintiff was riding was switched at a rapid and dangerous rate of speed without having a switchman on said car, and without giving plaintiff notice or warning of the approach of said car, and that the drawhead or drawheads or coupling appliances of the two cars upon or between which plaintiff was working were out of order, broken, unsafe, and dangerous, old, worn, and defective, and that the running boards on said two cars last mentioned were too long, and extended out over the ends of the cars too far. That by reason of the fact that either one or both of said drawheads between the two cars where plaintiff met with his accident, or some appliance or part of said drawhead or drawheads was old, worn, defective, or out of order, when said two cars were struck by the other moving cut of cars it caused and permitted the drawheads to give way and allowed the cars to come too close together and so close together as to allow and permit an insufficient space to be and remain between the ends of the running boards, and thereby caused plaintiff to be caught between the ends of the running boards and seriously and permanently injured.

The jury was instructed that:

"If you find that while plaintiff was on a cut of cars then being switched and attempting to control the same by the use of the brakes, defendant's other employés engaged in switching cars with plaintiff, without any notice or warning to him, switched another cut of cars in on the same side track at a rapid and dangerous rate of speed, if they did, without notice or warning to plaintiff, and without having a switchman riding thereon to control the movement of said cars, if such was a fact and you so find, and that by reason thereof said cut of cars struck the cut on which plaintiff was riding with such force and violence as to cause plaintiff to be thrown from the position he then occupied on the said cars, and caused him to be caught between the ends of the running boards of said two cars and injured, as alleged by him, if such was a fact and you so find, and you further find that defendant and its employés was or were guilty of negligence, as that term has heretofore been defined and explained to you, in switching said cut of cars in on said side track at the rate of speed you find they were being switched, and without any notice or warning to plaintiff, if he had no notice or warning and none was given him, and without having a switchman stationed on said cut of cars to control the movement of the same, if there was none, and that such negligence, if any, on the part of the said defendant, or its employés, was the direct and proximate cause of plaintiff's accident and consequent injury, if any, and you do not find for defendant under another or other paragraph of this charge, then in that event your verdict will be for the plaintiff; or, if you find and believe from a preponderance of the evidence that the drawheads and coupling appliances on one or both of the two cars between which plaintiff was riding was or were defective and out of order, and that defendant failed to use ordinary care to provide and keep reasonably safe such drawheads and coupling appliance and that by such failure, if any, defendant was negligent, and such negligence, if any, was the proximate cause of the injury, if any, to plaintiff, alleged by him, you will find for the plaintiff, unless you find for the defendant under another or other paragraph of this charge."

[1] Error is assigned to the submission of any issue of negligence with respect to defective drawheads or coupling appliances because there was no evidence raising such issue.

Plaintiff testified he was on a string of two Pacific Express Company cars Nos. 5298 and 3916 going towards the icehouse when he was directed by the foreman to stop them, which he did with the brakes; he was in between these cars on a brake platform and had reached down with his club to knock the dog off the ratchet, so as to slack the brake when another car came down and hit the string of cars he was on; it did not couple but rebounded and struck again; when it first struck it drove him backwards between the running boards and when it struck the second time it caught him between the running boards and crushed him. The brake platforms were on the ends of the two cars and about 18 or 20 inches below the top. From my own knowledge, gained in work as a railroad man and switchman in the yards, together with my knowledge of the manner of switching these cars, the P. F. E. Company cars, if the drawheads and coupling appliances are in a reasonably safe condition for use, I will state that in the ordinary switching of cars and allowing them to be struck, when they couple together, these end boards will not come together close enough to catch you. The drawheads hold them apart. They are equipped with a follow plate and springs, and then when the drawhead comes up against the ends of the car the springs keep them apart. * * * These drawheads hold the end beams of the car apart. Unless something gives, in the ordinary switching of cars by means of striking with the other cars, or an engine, it is not possible for them to come close enough together to catch me, a man of my size, between the ends of those two running boards.

D. W. Bowers, an experienced car repairer and former car inspector, testified as an expert as follows:

"If you have two cars coupled together, with the brakes on one of them and the cars are standing still, and you let another car down the same track, just one car run down, and strikes these two cars on the end of one of them, with this car running four miles an hour, if these couplers are in good condition, coupler and coupler appliances are in a reasonably safe condition, that blow will not be sufficient to break

anything, if they are in good condition. If the drawheads and coupling appliances are in a reasonably safe condition and you let two cars as I have mentioned be struck by another car running four miles an hour down a 1 per cent. grade, it could not possibly drive them closer together than 18 inches—I mean the running boards. The cars themselves would come about 33 to 36 inches, just the average of the couplers. That is as close as they could possibly be driven, unless there was something wrong. The defect that would allow the cars to come closer together than 36 inches would be the coupler head would have to break off, or the coupler would have to be shoved clean under the car—shoved clean through the end sill and shove the coupler back under the car to let them come together. If these couplers are properly placed on the cars and are in a reasonably safe condition, it couldn't possibly get the cars closer together than a certain distance, not under 33 inches. I am talking about these P. F. E. cars; not other cars. With that class of couplers it would not be under 33 inches; it could not be under 33 inches. Now, if I, as an expert, would see the cars come close enough together so·that the end of the running boards would catch a man the size of this man and mash him so as to break his pelvis, then I would say that there was something wrong with the appliances, because it couldn't occur otherwise."

W. O. White traveling car inspector for appellant, testified:

"These are separated 31 inches when shoved together. If they come closer than 31 inches, then there is something wrong; they have got to be—in other words, there is a defect; that is, if you have got the same sized couplers, it would be a defect—if they come any closer than 31 inches. If those cars did, as a matter of fact, come closer than 31 inches and catch Mr. Evans, then it was due to some defect in their gear or coupling appliances somewhere; it would have to be. If there was a defect in those cars and they could be brought together closer than the 31 inches, they are not supposed to come any closer than that, and they cannot come any closer than that if they are in a reasonably safe condition. If they do come closer than that they are not in a reasonably safe condition. * * * They could not get any closer than that. The couplers in a compact position, when striking the striking plate, or end sill of the car, the ends of the two running boards would be 12⅝ inches apart. * * * Then, according to my measurement here, those cars could not come closer than 12⅝ inches—the ends of the running boards—they couldn't get any closer than that. I am talking about what holds them apart—12⅝ inches is what the figures would be."

Alfred Cross, chief car inspector of the appellant, testified:

"With all the force you can get on these two cars they ought not—if the drawheads and coupling appliances are in a reasonably safe condition, they ought not—to come closer than 31 inches to each other. They could not do that. If they do come nearer than 31 inches, it is not due to some defect in the coupler or coupling appliances. It might be due to the end sill. It would be due to some of the appliances which are put on there to hold them a certain distance apart. It may be in the coupler, it may be in the drawhead, or it may be in the end sill; but it must be that there is a defect somewhere that allows them to come closer than 31 inches. They can't get any further; can't get in there unless there is a defect in the end sill, the two end sills. The end sill—the two end sills—and the drawheads are placed in there for the purpose of keeping the cars a certain distance apart. One of the objects is, when

you are jambing them together they must not come nearer than 31 inches of each other. They could not; that is, the object of those appliances is to keep them separated 31 inches, even if there is pressure on both ends."

According to the testimony of Bowers the ends of the running boards on these cars, if the projections of the ends were in accordance with the regulations of the Interstate Commerce Commission could not come closer together than 18 inches, whereas, according to the testimony of White and Cross, such ends might come as close as 12⅝ inches.

There is evidence by appellant's witnesses showing inspections made of the cars immediately after the accident, and that the drawheads and coupling appliances were in good condition; but the testimony of plaintiff and Bowers shows that there must have been some defect therein if the accident occurred in the manner detailed by plaintiff. This testimony was sufficient to raise the issue as to such defect. It was circumstantial evidence of a positive nature directly tending to establish the truth of the allegations concerning defective drawheads or coupling appliances. Such being its character, appellee's case does not rest upon the doctrine of res ipsa loquitur (Brewing Co. v. Willie, on rehearing 52 Tex. Civ. App. 550, 114 S. W. 186), and certain rules applicable under this doctrine and raised under this assignment have no application. From what has been said it follows that the court did not err in submitting this issue.

[2] Error is next assigned to that portion of the charge quoted in submitting the issue of negligence arising from excessive speed of the car which struck the string upon which plaintiff was riding.

All of the testimony upon this phase of the case is as follows: Plaintiff testified:

"The car came down hard enough to knock me off of them. * * * In order to make an automatic coupling it is necessary that the car be shoved with a reasonable amount of force, or it won't couple at all. I don't know of my own knowledge at what speed the car came down that coupled into me. I don't know about that at all. * * * The car that struck me hit a pretty good lick; I could tell that by the jar I got. In switching there, to make that coupling, to strike it as hard as it did, I think, about the way I felt, the way it felt, it must have hit along about four miles an hour. That is downgrade there. * * * It was about four car lengths. When the cars struck my cut of cars it was not going over four miles an hour. He didn't shunt it down or kick it down. I didn't see the car. I don't know how fast it was going, but I guess about four miles an hour, that is not too much speed. I am acquainted with the yards there in Los Angeles. There is about a 1 per cent. grade there, and I know it is customary for the man following the engine to give what he calls the pin signal, which means to give enough slack to pull the pin, and then let the car run down of its own momentum. That's the way they make those, in that part of the yards, I knew that, I had been working there in the yards for three years. I knew where the upgrades were and where the downgrades were."

J. D. Sullivan, a witness for defendant, testified as follows:

"We started him down with two cars and then dropped another one down and he was to take those cars on down the line to the icehouse—the first two cars—these cars rolled about three or four car lengths. Then I sent down another car. I sent that car down; we just let it go down, let the slack out and cut it off. The car rolled of its own momentum. The reason it went of its own momentum and was not pushed or shoved by the engine was that there was grade enough for it to go by itself. It was not kicked. I gave the engineer this signal (indicating) that means to slacken the pin so you can pull the pin. When you pull the pin the car starts on its way. I said that the car was not kicked."

He further testified that the distance to go in this instance was three or four car lengths, about 100 or 120 feet, something like that.

Ralph H. Groves, a witness for defendant, testified that he was handling the engine at the time, under the direction of the engineer, who was present. He further testified as follows:

"As to how the car was let down, let loose, just before Evans was hurt, I got the signal from Mr. Sullivan, the pin signal; that is a signal to give the slack of the cars, so as to pull the pin; they give the signal for a little slack, so as to get the pin, and I just opened my throttle a trifle. When he gave me that signal, I just touched the throttle, and he gave me the stop signal. It was right at the switch. I did not want to go down another track, and I just touched the throttle a trifle; that is the way they do for a pin signal. There is a grade there, just a slight grade. * * * When I got this signal, I was going ahead, moving. We were moving very slow, going about four miles an hour, I judge; not faster than that. I only gave the engine enough steam to give the pin. We were going about four miles an hour. I had to move the engine that fast to let the car go. Then I had to move the engine faster than the cars were going, so as to take the slack up; naturally, the engine was holding the cars there. I had to give the engine a little steam, so he could pull the pin, and then the cars had a certain momentum, and they left my engine at about four miles an hour. We were on downgrade. * * * When I got a signal to give the slack, I was standing still at that time. I was standing still when he gave me the signal, and when I say four miles an hour I mean that I gave them a start that I thought would be just about that; a very slow gait. I was not moving the cars at all up to the time I got his signal."

This evidence, in our judgment, is insufficient to raise an issue of negligence with respect to excessive speed. It is shown that the moving car must have had some momentum in order to effect an automatic coupling, and it is further shown that this car was moving very slowly. There is nothing to show that it was moving at a rate of speed or had a momentum greater than was necessary to effect the coupling automatically. There is nothing to indicate that the force of the impact was anything unusual. This issue should not have been submitted.

[3] Error is also assigned to the refusal of a special charge to the effect that there was no evidence of negligence proximately causing injury to plaintiff by reason of failing to have a switchman on the car which struck and coupled to the cars whereon plaintiff was at the time of the accident and withdrawing from the jury any issue of negligence in this respect. To this assignment appellees reply that under the pleadings and evidence it was a question of fact for the jury to determine whether or not the defendant was guilty of negligence in failing to follow the custom and practice of having a switchman ride the cars for the purpose of controlling the same.

There is evidence in the record tending to show that under its rules and custom it was incumbent upon appellant to have had a switchman upon the car which was shoved against the string plaintiff was on; but if it be conceded that defendant was negligent in failing to follow its rule and custom upon this occasion, nevertheless such negligence could not be made the basis of a recovery, unless it was a proximate cause of the injury. It was alleged that he was required to be there for the purpose of controlling the movement of the car by means of the hand brakes. In passing upon the preceding assignment, it is shown that the impact and movement of the car was in nowise improper. The impact and movement being proper there was no necessity in the instant movement that any one should have been upon the car to control the same. This question is intimately connected with that which has just been passed upon, and if the impact and movement was proper, the failure to have a switchman on the car which was shoved against the string whereon plaintiff was, whose duty it was to control its movement, could not have been a proximate cause of the injury. For this reason the requested instruction should have been given.

From what has been said it follows that the cause must be reversed, and it is therefore unnecessary to pass upon the remaining assignments.

However, it may be remarked that we regard as improper the argument of appellee's counsel complained of in the seventh assignment, and that it probably presents reversible error.

Reversed and remanded.